# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-0833

THE LEMOINE COMPANY, L.L.C.

VERSUS

LAFAYETTE AIRPORT COMMISSION

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2010-0308
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, James T. Genovese, and David E.Chatelain,[*] Judges.

**AFFIRMED.**

**Murphy J. Foster, III**
**Yvonne R. Olinde**
**Breazeale, Sachse & Wilson, L.L.P.**
**P. O. Box 3197**
**Baton Rouge, LA 70821-3197**
**(225) 387-4000**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **The Lemoine Company, L.L.C.**

---

*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Rickey W. Miniex**
**Clyde R. Simien**
**Todd M. Swartzendruber**
**Erica R. Mayon**
**Simien & Miniex, APLC**
**104 Rue Iberville**
**Lafayette, LA 70508**
**(337) 269-0222**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Lafayette Airport Commission**

**H. Bruce Shreves**
**Denise C. Puente**
**Simon, Peragine, Smith & Redfearn, L.L.P.**
**1100 Poydras Street, 30th Floor**
**New Orleans, LA 70163-3000**
**(504) 569-2030**
**COUNSEL FOR INTERVENOR/APPELLEE:**
    **The Harper Company of Ohio**

PETERS, J.

This litigation involves a dispute over the award of a contract for a public works project at the Lafayette, Louisiana airport. The plaintiff, The Lemoine Company, L.L.C. (Lemoine), brought suit against the Lafayette Airport Commission (Airport Commission) seeking to have the bid of The Harper Company of Ohio (Harper) rejected and seeking to be awarded the contract as the next lowest bidder. Lemoine now appeals the trial court's judgment dismissing all of its requests for relief. For the following reasons, we affirm the trial court's judgment in all respects.

## PROCEDURAL HISTORY OF THE LITIGATION

In late 2009, the Airport Commission sought bids for a public works project designed to upgrade its cargo apron and connector taxiways at the Lafayette Regional Airport. When the bids were opened on December 23, 2009, Harper's $7,890,511.03 bid was the lowest of the seven bids submitted and was followed closely by Lemoine's $7,960,946.54 bid.

On January 6, 2010, Lemoine submitted a formal bid protest to the Airport Commission, asserting that Harper's bid should be rejected and its bid should be accepted. Specifically, Lemoine asserted that Harper's failure to satisfactorily complete and sign the required bid form rendered its bid unacceptable. The next day, January 7, 2009, the Airport Commission rejected Lemoine's protest.

Lemoine responded to this rejection on January 15, 2010, by filing suit against the Airport Commission. In its suit, Lemoine sought a preliminary and permanent injunction prohibiting the Airport Commission from awarding the contract to Harper, an order of mandamus compelling the Airport Commission to award the contract to its company, and a declaratory judgment to the effect that any contract entered into between Harper and the Airport Commission was null and void. Alternatively,

Lemoine sought a monetary damage award. On January 26, 2010, Harper intervened in the lawsuit, asserting that its bid complied with the public bid law.

The trial court entertained and rejected Lemoine's request for a preliminary injunction at a hearing held on January 29, 2010. Thereafter, the parties stipulated that all of Lemoine's claims would be considered on the merits by the submission of the pleadings and evidence presented at the hearing on the preliminary injunction.[1] Based on this stipulation, the trial court executed a judgment on April 14, 2010, dismissing all of Lemoine's claims for relief.[2]

In its appeal to this court, Lemoine asserts three assignments of error:

1)    The District Court erred in failing to conclude that the bid submitted by Harper should have been disqualified as non-responsive and non-conforming for its failure to fill in all of the blanks on the bid form as required in the bidding documents.

2)    The District Court erred in failing to conclude that the bid submitted by Harper should have been disqualified as non-responsive and non-conforming because the signature on the bid did not conform with the records of the Secretary of State, nor was any evidence of agency, corporate, or partnership authority attached to the submission of the bid.

3)    The District Court erred in failing to determine the validity of the bid by examining only the bid, and instead referring to evidence beyond the bid documents submitted.

**OPINION**

This litigation is governed by Louisiana's Public Bid Law, La.R.S. 38:2212, *et seq.*, a law which "was enacted in the interest of the taxpaying citizens and has for

---

[1]The evidence included a copy of the bids submitted by Lemoine and Harper; the records of the Louisiana Secretary of State concerning the status of Harper's organization in Louisiana; the Airport Authority's instructions to bidders and amendments thereto; Lemoine's January 6, 2010 protest letter; an affidavit by Paul Segura, Jr., the Airport Authority chairperson; and an affidavit by Harper's vice-president, James R. Thomas. Lemoine timely objected to the introduction of Mr. Thomas' affidavit.

[2]Even before the judgment was signed, on March 22, 2010, the Airport Commission had awarded the contract to Harper.

its purpose their protection against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices." *Haughton Elevator Div. v. State Div. of Admin.*, 367 So.2d 1161, 1164 (La.1979). In enacting the public bid law, the legislature has specifically prescribed the conditions under which the state will permit public work to be done on its behalf or on behalf of its political subdivisions. *Hamp's Constr, L.L.C. v. The City of New Orleans*, 05-489 (La. 2/22/06), 924 So.2d 104; *Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth.*, 04-211 (La. 3/18/04), 867 So.2d 651. In the words of our supreme court, it is "a prohibitory law founded on public policy." *Broadmoor, L.L.C.*, 867 So.2d at 656.

Given the nature of the legislative mandate, a political entity such as the Airport Commission has no authority to take any action that is inconsistent with the public bid law. *Broadmoor, L.L.C.,* 867 So.2d 651. Specifically, the public entity may not waive any requirements of the public bid law, any requirements stated in the advertisement for bid, nor any requirements stated on the bid form. La.R.S. 38:2212 A(1)(b); *Hamp's Constr., L.L.C.,* 924 So.2d 104.

As a further effort to specify the prescribed conditions relating to the letting of public works projects, a Louisiana Uniform Public Work Bid Form was developed by the Louisiana Division of Administration pursuant to the mandate of La.R.S. 38:2212, which provides that the form so developed

> shall require only the information necessary to determine the lowest bidder and *the following sections and information*: Bid Security or Bid Bond, Acknowledgment of Addenda, Base Bid, *Alternates*, Bid Total, *Signature of Bidder*, Name, Title and Address of Bidder, name of Firm or Joint Venture, Corporate Resolution and Louisiana Contractors License Number, and on public works projects where unit prices are utilized, a section on the bid form where the unit price utilized in the bid shall be set forth.

3

La.R.S. 38:2212(A)(1)(b)(ii)(aa) (emphasis added).

Any other documentation of information not required to be included on the public bid form itself "shall be furnished by all bidders at a later date and time, in accordance with the Bidding Documents." La.R.S. 38:2212(A)(1)(b)(ii)(bb).

The content, or lack of content, of Harper's submitted bid form is the basis of all three of Lemoine's assignments of error.

*Assignment of Error Number One*

In its instructions to the bidders, the Airport Commission stated in Section 2 that "[a]ll blank spaces in the proposal form shall be properly filled in." Additionally, in Section 3, as amended by the Airport Commission, the following language appears:

> The Bidder is required to fill in all blank spaces and to furnish all information required by the Louisiana Uniform Public Work Bid Form with Bid Bond. Only the Louisiana Uniform Public Work Bid Form with Bid Bond is required at the time of bid submission. Any other information or certifications required by the contract documents can be submitted following conditional notice of award.

The section of the public bid form at issue in this assignment of error reads as follows:

> ALTERNATES: For any and all work required by the Bidding Documents for Alternates including any and all unit prices designated as alternates in the unit price description.
>
> Alternate No. 1 *(Owner to provide description of alternate and state whether add or deduct)* for the lump sum of :
> _____Dollars ($_____)
>
> Alternate No. 1 *(Owner to provide description of alternate and state whether add or deduct)* for the lump sum of :
> _____Dollars ($_____)
>
> Alternate No. 1 *(Owner to provide description of alternate and state whether add or deduct)* for the lump sum of :
> _____Dollars ($_____)

Despite the inclusion of this language in the bid form furnished to Harper, the bidding

documents provided by the Airport Commission contained no provision for alternates applicable to the proposed project. That being the case, rather than placing a "not applicable" or similar notation in this section, Harper left this section completely blank. Lemoine asserts in this assignment of error that Harper's failure to fill in the blank spaces of this section is fatal to the sufficiency of its bid and that its bid should be rejected.

In considering Lemoine's argument, we first note that the supreme court in *Hamp's Construction, L.L.C.*, 924 So.2d at 110, addressed this form completion issue in general:

> According to the basic rules of statutory construction, when the written law is clear and unambiguous, and its application leads to no absurd consequences, the law shall be applied as written. *Rosenbush Claims Service, Inc. v. City of New Orleans*, 94-2223 (La.4/10/95), 653 So.2d 538, 544. Further, the legislature is presumed to have enacted a statute in light of the preceding statutes involving the same subject matter and court decisions construing those statutes, and where the new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law. *Id.* There is nothing ambiguous about La. R.S. 38:2212A(A)(b); the requirements of the Public Bid Law, the advertisement for bids and the bid form *shall not be waived by any public entity*. The legislature changed the wording of this statute several times in an attempt to change the law, and to make clear that the requirements of the advertisement for bids and the bid form, as well as the Public Bid Law, shall not be waived. The most recent amendment to the statute serves to emphasize that these requirements cannot be waived under any circumstances, regardless of whether they could be considered as informalities. Accordingly, the public entity should not include any requirements in its advertisement for bids or bid form that it considers insignificant or waivable, because once included, these requirements are non-waivable as a matter of law.

In that decision, the supreme court concluded that the public entity did not have the authority to waive the bidder's failure to attach a copy of its invitation to bid to its public bid form, a requirement of the public entity's bid form. *See also Roof Tech., Inc. v. State, Div. of Admin, Office of Facility Planning and Control*, 09-925 (La.App.

5

1 Cir. 10/28/09), 29 So.3d 621 (where the court held that when the instructions to bidders required that "[a]ny interlineations, alteration or erasure must be initialed by the Signer of the bid or his authorized representative," the public entity was required to reject a bid on a public works project where the bidder failed to initial typing errors that were corrected using the typewriter's "word-out" function); *Beverly Constr. Co., L.L.C. v. Parish of Jefferson*, 07-847, p. 3 (La.App. 5 Cir. 2/6/08), 979 So.2d 551, 552, (where the bidder submitted its own corporate resolution form and did not complete and return the blank corporate resolution form that was in the bid package, the public entity properly rejected the bid because the advertisements for bids stated that "this bid package must be returned in its entirety" and "bid package, including instructions and specifications, must be returned in its entirety for bid to be valid." (capitalization in original removed)). Both of these appellate court decisions relied on the supreme court decision in *Hamp's Construction, L.L.C.,* 924 So.2d 104.

In this appeal, Harper and the Airport Commission argue that the Airport Commission's acceptance of Harper's bid was not a waiver of any requirement under the bid documents. Instead, they argue that because there were no alternate proposals to respond to, Harper was not required to complete this section of the public bid form. We agree.

As previously stated, the public bid law was enacted to protect Louisiana taxpayers from public contracts "entered into because of favoritism and involving exorbitant and extortionate prices." *Haughton Elevator Div.*, 367 So.2d at 1164. Also, as previously stated, we apply the law as written when it is "clear and unambiguous, *and* its application leads to no absurd consequences." *Hamp's Constr., L.L.C.*, 924 So.2d at 110 (emphasis added). Requiring a bidder to fill in blanks

6

having no bearing on its bid simply for the sake of making a notation on the document would lead to an absurd consequence in that it would require a bidder to perform a vain and useless act. As pointed out by Harper and the Airport Commission in argument, there was no information available for Harper to "properly" fill in the blanks. In fact, the language immediately following the title in the "ALTERNATES" section provides that the section is "[f]or any and all work required by the Bidding Documents for Alternates including any and all unit prices designated as alternates in the unit price description." Thus, absent "work required by the Bidding Documents for Alternates," nothing was required of the prospective bidder, and, unlike the situation in *Hamp's Constr., L.L.C.*, 924 So.2d 104, the Airport Commission did not "waive" any requirement imposed by the Louisiana Public Bid Law, the advertisement for bids, or the bid form package.

We find no merit in Lemoine's first assignment of error.[3]

*Assignment of Error Number Two*

This assignment of error relates to the manner in which Harper's corporate officer executed its bid form. The Airport Commission's written instructions to potential bidders provided that relative to corporations, the bid form "shall be signed by the name of the corporation, followed by the signature of the officer authorized to sign, and the printed designation of the office he holds in the corporation." Additionally, the bid form itself contains a footnote that reads as follows:

> If someone other than a corporate officer signs for the Bidder/Contractor, a copy of a corporate resolution or other signature authorization shall be required for submission of bid. Failure to include

---

[3] Harper also asserts that Lemoine's interpretation of the bid instructions is inconsistent given the fact that Lemoine failed to complete all the blank spaces on its own bid. However, the question of whether Lemoine's bid meets the requirements of the public bid law is not before us, and we will not consider this argument.

7

a copy of the appropriate signature authorization, if required, may result in the rejection of the bid unless bidder has complied with La.R.S. 38:2212(A)(1)(c) or RS [sic] 38:2212(O).[4]

Harper's bid form contains the signature of Jim Thomas, whom the bid form identifies as Harper's vice president. Attached to the bid form is a notarized affidavit signed by Jim Thomas wherein he asserts, among other things, that he is the vice president of the Harper corporation.

In arguing that the signature on Harper's bid form is not sufficient, Lemoine points to the facts that Mr. Thomas' affidavit is not in the form of a corporate resolution and that the current annual report on file with the Louisiana Secretary of State identifies "James R. Thomas," not "Jim Thomas," as a vice president of the corporation. While not seriously disputing that "Jim Thomas" and "James R. Thomas" are the same person, Lemoine asserts that because Mr. Thomas signed the bid form as "Jim Thomas" and not as "James R. Thomas," the bid should have been rejected as not conforming with the bid requirements.

We find no merit in this argument. Nothing in the Airport Commission's instructions to bidders requires proof of corporate authority. These instructions merely require that the corporate office of the individual signing the bid form be identified. The footnote on the bid form requires proof of corporate authority only when the individual signing on behalf of the corporation is not a corporate officer. Nothing in the instructions requires that the corporate officer's name and signature be exactly the same as the name which appears on the secretary of state's records.

---

[4] Louisiana Revised Statutes 38:2212(A)(1)(c)(i) relates to bids submitted to the division of administration while La.R.S. 38:2212(O) relates to bids submitted to a public entity. Both provide conditions that, if met, would establish the authority of the individual signing the bid submission. However, neither are applicable to the matter before us because Jim Thomas signed as a corporate officer of Harper.

Thus, the question is not whether "Jim Thomas" is listed with the secretary of state as one of Harper's corporate officers, but rather whether the signature of "Jim Thomas" on the bid form is that of one of Harper's corporate officers. Lemoine bears the burden of proof by a preponderance of the evidence to establish that the Airport Commission violated the public bid law in accepting Harper's bid. *Broadmoor, L.L.C.*, 867 So.2d 651. Lemoine offered no evidence to establish that Jim Thomas was not a officer in the Harper corporation. We, therefore, hold the trial court did not err in finding that Harper's bid was properly signed by a corporate officer.

*Assignment of Error Number Three*

In this final assignment of error, Lemoine argues that the trial court erred in considering a January 23, 2010 affidavit executed by Mr. Thomas wherein he again asserted that his nickname is "Jim," that he is the same "Jim Thomas" who signed the bid, and that he is also the same person listed as "James R. Thomas" in the records of the secretary of state. Specifically, Lemoine argues that it was improper for the trial court to look beyond the "four corners" of the bid document, to "parole evidence," to confirm the validity of Harper's bid. Because of our disposition of the second assignment of error, we need not consider this assignment.

**DISPOSITION**

For the foregoing reasons, we affirm the trial court's judgment dismissing all of the claims of The Lemoine Company, L.L.C., against the Lafayette Airport Commission. We assess all costs of this appeal to The Lemoine Company, L.L.C.

**AFFIRMED.**

9